UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEANNINE CAILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-12040-DJC |
| ) | |
| CARE ALTERNATIVES OF ) | |
| MASSACHUSETTS, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.** March 23, 2012

## I. Introduction

Plaintiff Jeannine Cailler ("Cailler") brings this action against Defendant Care Alternatives of Massachusetts, LLC ("Care Alternatives") alleging that Care Alternatives failed to provide her a reasonable accommodation for her handicap and discriminated against her on the basis of her handicap in terminating her employment in violation of Mass. Gen. L. c. 151B. Cailler and Care Alternatives have submitted cross-motions for summary judgment. For the reasons discussed below, Care Alternatives' motion for summary judgment is GRANTED and Cailler's motion for summary judgment is DENIED.

## II. Burden of Proof and Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56 (a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Cross-motions

for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991).

### III. Factual Background

The following facts are undisputed.

On February 27, 2006, Cailler began her employment with Care Alternatives as a certified nursing assistant ("CNA"). (Compl. ¶ 3; Andrea Kramer Affidavit ("Kramer Aff."), Ex. G (Personnel New Hire and Change Form)). Care Alternatives provides hospice services to individuals in nursing homes and private residences. (Kramer Aff., Ex. C (Deposition of Jeannine Cailler ("Cailler Dep.") at 17-19)). As a CNA with Care Alternatives, Cailler served as a hospice aide. (Kramer Aff., Ex. D (Deposition of Susan J. Kearns ("Kearns Dep.") at 21)). In this capacity, she cared for patients in their homes and in nursing homes during the last months of their lives. (Kramer Aff., Ex. C (Cailler Dep. at 17)). She was responsible for washing and dressing patients, transferring patients and assisting them with mobility. (Kramer Aff., Ex. C (Cailler Dep. at 20)).

In February 2008, Cailler injured herself outside of work. (Kramer Aff., Ex. C (Cailler Dep. at 7)). As a result of this injury, Cailler took a leave of absence from work pursuant to the Family Medical Leave Act ("FMLA") from February 5, 2008 to March 24, 2008. (Kramer Aff., Ex. B (Deposition of Susan Anderson ("Anderson Dep.") at 86)).

Three months later, on June 17, 2008, Cailler injured her back while working for Care Alternatives and assisting a patient in the patient's home. (Kramer Aff., Ex. C (Cailler Dep. at 31-32); Def. Statement of Facts ¶ 18; Pl. Resp. to Def. Statement of Facts ¶ 18). That night, Susan Anderson, Director of Human Resources, contacted Cailler by telephone and requested that she see a physician with whom Anderson had made an appointment for Cailler for the next day regarding the injury. (Kramer Aff., Ex. C (Cailler Dep. at 15-16); Pl. Mem., Tab 4 (Cailler Dep. at 34)). The next day, Cailler informed Care Alternatives that the physician she had seen said that she was not able to return to work and that she would need to be out of work for a week. (Pl. Mem., Tab 4 (Cailler Dep. at 34-35)). The next week, Cailler notified Care Alternatives that she would be unable to work for a longer period of time. (Pl. Mem., Tab 4 (Cailler Dep. at 35); Def. Statement of Facts ¶ 11; Pl. Resp. to Def. Statement of Facts ¶ 11). Cailler then stopped working due to her back injury beginning June 18, 2008. (Kramer Aff., Ex. B (Anderson Dep. at 79)). She filed for and received workers' compensation benefits for the period from June 17, 2008 through August 10, 2008. (Kramer Aff., Ex. C (Cailler Dep. at 55)). Cailler was still physically unable to perform the functions of her job as of August 10, 2008. (Kramer Aff., Ex. C (Cailler Dep. at 9); Pl. Mem., Tab 4 (Cailler Dep. at 11-12)).[1]

Care Alternatives has a Modified Leave/Return to Work Program ("Program") through which an employee injured on the job who is able to do so returns to work in some form of modified

---

[1] Cailler's suggestion that she had not exhausted all of her leave is not supported by the record. The record shows that at Care Alternatives, a medical leave of absence for injuries compensable by workers compensation benefits runs concurrent with FLMA leave. (Kramer Aff., Ex. B (Anderson Dep. at 28)). In addition to the FMLA leave she had taken earlier in 2008, Cailler exhausted the twelve weeks of FMLA leave to which she was entitled before August 6, 2008. Kramer Aff., Ex. B (Anderson Dep. at 86). Cailler has presented no evidence to the contrary.

duty while she is still recovering. (Pl. Mem., Tab 3 (Return to Work/Modified Duty Program); Def. Statement of Facts ¶ 19; Pl. Resp. to Def. Statement of Facts ¶ 19). The Program, adopted in 2007, provides modified duty for up to sixty days and the employee receives her same rate of pay while on modified duty. (Pl. Mem., Tab 3, Tab 2 (Anderson Dep. at 41)). Assignments under the Program are not designed to become permanent and "[i]f an employee is not released by his/her physician to full duty without restrictions after sixty days of modified duty, employment may be terminated." Pl. Mem., Tab 3. On August 6, 2008, Anderson sent a letter to Cailler, stating that in light of the limitations and restrictions noted by her treating physician, Care Alternatives had "developed a transitional duty position" for Cailler under the Program. (Kramer Aff., Ex. E (August 6, 2008 letter from Anderson to Cailler), Ex. F (Job Description of Hospice Assistant Position)). On August 11, 2008, Cailler began working as a hospice assistant in Care Alternatives' corporate office in Marlborough under the Program. (Kramer Aff., Ex. F; Pl. Mem., Tab 4 (Cailler Dep. at 38-39)). Her responsibilities as a hospice assistant were to answer the phone, file task sheets and to "help prepare for educational books," Pl. Mem., Tab 4 (Cailler Dep. at 38), and was not the type of work a hospice aide performs. (Kramer Aff., Ex. C (Cailler Dep. at 59)). Care Alternatives created the hospice assistant position for Cailler so that she could work subject to the limitations caused by her injury; she did not fill an existing, but vacant, position. (Kramer Aff., Ex. B (Anderson Dep. at 43)). Cailler was paid as though she performed her job as a CNA. (Def. Statement of Facts ¶ 24; Pl. Resp. to Def. Statement of Facts ¶ 24). While working in the corporate office as a hospice assistant, Cailler remained physically unable to perform the duties of her job as a CNA. (Kramer Aff., Ex. C (Cailler Dep. at 9, 13)). Care Alternatives communicated with Cailler's physicians regarding her recovery during her modified duty period. (Kramer Aff., Ex. C (Cailler Dep. at 46-47)). After each

4

appointment with her physician during this period, Cailler faxed or brought her paperwork to Care Alternatives. (Kramer Aff., Ex. C (Cailler Dep. at 46-47)).

On September 24, 2008, Anderson sent Cailler a letter advising her that her modified duty was expiring on the 60th day and that her employment would be terminated if she could not return to full duty by October 11, 2008. (Pl. Mem., Tab 5). The letter stated:

> As you are aware, your modified duty began on 8/11/2008. This letter is to advise you that our modified duty program offers accommodations for up to 60 days. If an employee is not released to Full Duty without restrictions after 60 days, his/her employment with Care Alternatives will be terminated. This means that if your treating physician does not release you to full duty by October 11, 2008, your employment will be terminated. Your injury will still be treated under worker compensation regulations, however.

Pl. Mem., Tab 5. After Cailler received the letter, she neither asked Anderson whether Care Alternatives could extend the sixty-day period of the Program, (Kramer Aff., Ex. C (Cailler Dep. at 53)), nor did she speak with anyone at Care Alternatives about the possibility of extending her modified duty under the Program. (Kramer Aff., Ex. C (Cailler Dep. at 14)). As of October 10, 2008, Cailler remained unable to perform the functions of her job as CNA. (Kramer Aff., Ex. C (Cailler Dep. at 9); Pl. Mem., Tab 4 (Cailler Dep. at 11-12)). Cailler's treating physician informed her that she was unable to return to work and she communicated this information to Susan Kearns, Cailler's supervisor, and the Administrator, Terry McKenna, after Cailler received Anderson's September 24, 2008 letter. (Kramer Aff., Ex. C (Cailler Dep. at 13-14)). Although Cailler had asked her physician when she would be cleared to return to work in her position as a CNA, he was unable to provide her with a date. (Kramer Aff., Ex. C (Cailler Dep. at 57-58)). Because Cailler was unable to return to her position as a CNA by October 11, 2008, Care Alternatives terminated

5

her employment on October 10, 2008. (Pl. Mem., Tab 4 (Cailler Dep. at 11, 12)).

**IV.     Procedural History**

On October 5, 2009, Cailler filed a complaint in Middlesex Superior Court against Care Alternatives alleging her former employer failed to provide her with a reasonable accommodation in violation of Mass. Gen. L. c. 151B and c. 152, § 75B (Count I) and wrongfully terminated her employment on the basis of her disability in violation of Mass. Gen. L. c. 151B (Count II). (D. 6). On November 30, 2009, Care Alternatives removed this action to this Court, asserting subject matter jurisdiction under 28 U.S.C. § 1332. (D. 1). Cailler and Care Alternatives have now filed cross-motions for summary judgment. (D. 16, 19). The Court held a hearing on the motions and took the matter under advisement.

**V.      Discussion**

    **A.     Whether Cailler is a Qualified Handicapped Person Under Mass. Gen. L. c. 151B**

Pursuant to Mass. Gen. L. c. 151B, it is unlawful for an employer "to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business." Mass. Gen. L. c. 151B, § 4(16).

To establish a prima facie case of employment discrimination on the basis of handicap under c. 151B, § 4(16), the plaintiff must show that: (1) she is "handicapped" within the meaning of the statute; (2) is a "qualified handicapped person" capable of performing the essential functions of her

job either with or without a reasonable accommodation; and (3) that she was subject to an adverse employment action because of her handicap. Godfrey v. Globe Newspaper Co., Inc., 457 Mass. 113, 120 (2010).

To show that an employer has failed to provide a reasonable accommodation, a plaintiff must demonstrate "1) that she is a qualified individual with a disability, 2) that the employer, despite knowing of the employee's physical or mental limitations, did not reasonably accommodate those limitations, and 3) that the employer's failure to do so affected the terms, conditions, or privileges of the plaintiff's employment." Flanagan-Uusitalo v. D.T. Indus., Inc., 190 F. Supp. 2d 105, 115 (D. Mass. 2001) (internal quotation marks and citation omitted). Since the parties do not dispute that Cailler was handicapped[2] at the time her employment was terminated within the meaning of c. 151B, the Court turns to whether she was a "qualified handicapped person" at that time.

Cailler bears the burden of showing she is a "qualified handicapped person." Jones v. Walgreen Co., 765 F. Supp. 2d 100, 107 (D. Mass. 2011). A "qualified handicapped person" is one who is "capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with a reasonable accommodation to his handicap." Mass. Gen. L. c. 151B, § 1(16); Godfrey, 457 Mass. at 119. "A 'qualified handicapped person' is entitled to a 'reasonable accommodation' that will enable him to perform the essential functions of his job, so long as the accommodation does not place an undue burden or hardship on

---

[2] A "handicap" is defined as "(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment . . . ." Mass. Gen. L. c. 151B, § 1(17).

7

the employer." Godfrey, 457 Mass. at 119.³ "The employee bears the initial burden of producing some evidence that an accommodation that would allow him or her to perform the essential functions of the position would be possible, and therefore that he or she is a 'qualified handicapped person.'" Id. at 120. Cailler concedes that she was unable to perform the essential functions of her job without a reasonable accommodation in August and October of 2008. (Def. Statement of Facts at ¶¶ 14, 31; Pl. Resp. to Def. Statement of Facts at ¶¶ 14, 31). The issue is, therefore, whether on the record of undisputed facts, Cailler has presented sufficient evidence to warrant a finding in her favor that she was able to perform the essential functions of her job *with* a reasonable accommodation to establish that she was a "qualified handicapped person." If she "is unable to demonstrate that she [could] do the job, with . . . accommodation, then she is not a 'qualified handicapped person,'" Leach v. Comm'r of the Mass. Rehabilitation Comm'n, 63 Mass. App. Ct. 563, 569 (2005), and cannot prevail on her claim under Mass. Gen. L. c. 151B.⁴

---

³Pursuant to Mass. Gen. L. c. 151B, § 4(16), "[i]n determining whether an accommodation would impose an undue hardship on the conduct of the employer's business, factors to be considered include: -- (1) the overall size of the employer's business with respect to the number of employees, number and type of facilities, and size of budget or available assets; (2) the type of the employer's operation, including the composition and structure of the employer's workforce; and (3) the nature and cost of the accommodation needed."

⁴Cailler's reliance on the Workers' Compensation Statute, Mass. Gen. L. c. 152, §75B(1) and Gilman v. C & S Wholesale Grocers, Inc., 170 F. Supp. 2d 77, 83, 85 (D. Mass. 2001) (denying summary judgment and finding that a reasonable jury could conclude the plaintiff was a qualified handicapped person within the meaning of Mass. Gen. L. c. 152, § 75B(1) to prevail on his claim under Mass. Gen. L. c. 151B, §4(16), in light of the fact that plaintiff suffered a workplace injury, was capable of performing the essential functions of his job and defendant may have "regarded" him as handicapped) (Pl. Mem. at 8), to support the proposition that a recipient of workers' compensation benefits, like Cailler, is presumed to be a qualified handicapped person under c. 151B, misconstrues the language of the statute and relevant case law. "[Mass. Gen. L. c. 152, § 75B(1)] and the relevant case law suggest only that a person on workers' compensation need not show that he is handicapped but still must demonstrate an ability to perform the essential functions of a particular job." Canfield v. Con-Way Freight, Inc.,

Because whether Cailler is a qualified handicapped person is determined by whether she could perform her duties as a CNA with a reasonable accommodation, the Court turns to the two accommodations Cailler never requested, but argues Care Alternatives should have provided: an unpaid extended leave of absence or continued employment in her modified duty position as a hospice assistant.

      **1.     Unpaid Extended Leave of Absence**

Although it is undisputed that Cailler did not request an unpaid extended leave of absence, she asserts that Care Alternatives failed to offer her such leave as a reasonable accommodation. (Pl. Mem. at 9). Cailler's claim that Care Alternatives should have, under these circumstances, offered her an unpaid extended leave of absence as a reasonable accommodation until Cailler recovered despite not providing an estimated time for a complete recovery, is similar to that of the plaintiff the Supreme Judicial Court rejected in Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 455-56 (2002). There, the plaintiff argued that her employer failed to provide her with a reasonable accommodation when it refused to extend her leave of absence beyond one year. Id. at 454. The plaintiff advanced the same arguments Cailler asserts here in support of her position: that the employer did not undertake an individualized analysis, did not consider making an exception to the one-year leave policy, and that its approach to her situation was rigid and inflexible. Id. at 454-55. In rejecting the plaintiff's arguments, Russell held that "[a]n open-ended or indefinite leave extension" is not a reasonable accommodation under Mass. Gen. L. c 151B, § 4(16). Id. at 455. Turning to plaintiff's particular circumstances there, the Court found that her employer's failure to

---

578 F. Supp. 2d 235, 240-41 (D. Mass. 2008) (citing cases including Gilman). This is particularly true where there was no dispute in Gilman, as there is here, that the employee was also able to perform the essential functions of the job. Gilman, 170 F. Supp. 2d at 82.

9

extend her leave of absence beyond one year as an accommodation was not in fact reasonable since at the time plaintiff requested such extension, she was not, at that time, able to return to her duties as an admitting assistant at the hospital. Id. at 456. Nor did the plaintiff indicate when she would be able to return to her position. Id. The employer was therefore "not required to extend the plaintiff's leave indefinitely as an accommodation to her disability . . . ." Id.

Given the undisputed facts in this case, the Court similarly finds that allowing Cailler to take an unpaid extended leave of absence was not a reasonable accommodation. Like the plaintiff in Russell, neither Cailler nor her physicians or Care Alternatives knew when she could return to work as a CNA at the time she entered modified duty under the Program on August 11, 2008 or at the time Care Alternatives terminated her employment on October 10, 2008. (Def. Statement of Facts ¶¶ 32, 33; Pl. Resp. to Def. Statement of Facts ¶¶ 32, 33). Any leave provided by Care Alternatives at that time would have been open-ended without any estimate as to when Cailler could return to perform her duties in that position.[5] On these facts, allowing Cailler to take an unpaid extended leave of absence for an indefinite period of time did not amount to a reasonable accommodation within the meaning of Mass. Gen. L. c. 151B, § 4(16). See Scott v. Encore Images, Inc., 80 Mass. App. Ct. 661, 667-68 (2011) (finding that the plaintiff was not a qualified handicapped person since he could not perform the essential functions of his job at the time with an accommodation and defendant was not required to provide the possible accommodation of an indefinite leave of absence); see also Dziamba v. Warner & Stackpole LLP, 56 Mass. App. Ct. 397, 405-407 (2002) (finding that the plaintiff failed to show he was a qualified handicapped person under Mass. Gen. L. c. 151B based

---

[5]The fact that Cailler later fully recovered by March 2009 (Def. Statement of Facts ¶ 34; Pl. Resp. to Def. Statement of Facts ¶ 34) is immaterial since neither party knew in October 2008 when Cailler would be able to return to work.

10

on his mental illness and noting that a reasonable accommodation does not "require an employer to wait an indefinite period for the recovery of an employee who has a medical condition that bears on job performance").

Although Care Alternatives could have chosen to give Cailler an additional leave of absence, the law does not compel them to do so here where such accommodation would not be reasonable. As the Court noted in Russell, based on the circumstances, "[a] request for a limited extension, setting a more definite time for the employee's return to work, may, . . . , constitute a reasonable accommodation, under . . . G.L. c. 151B, § 4(16)," 437 Mass. at 455.[6] Thus, if an employee needed a number of days to recover fully, it may well be a reasonable accommodation for an employer to grant such a request under those circumstances. Here, however, neither Care Alternatives nor Cailler or her physicians knew when Cailler would actually be able to return. The record is devoid

---

[6] In her deposition, Anderson testified that even though employment pursuant to the Program would terminate after sixty days, Care Alternatives might accommodate in another way a person who could not return to work for a finite period of time, for example, through an additional leave of absence. (Kramer Aff., Ex. B (Anderson Dep. at 68)). To this point, Anderson testified as follows:

> Q: Let's assume a situation where an employee needs an accommodation, needs a little extra unpaid leave of absence. If the employee came to you before the end of that 60 days and said I can't come back to work until the 68th day, might Care Alternatives accommodate that person if that enabled the person to then be able to perform the essential functions of their job?
>
> A: Yes. However it would not be under the modified duty program.
>
> Q: And by that you mean it would be unpaid leave as an accommodation?
>
> A: Correct.

Kramer Aff., Ex. B (Anderson Dep. at 68).

11

of any evidence that Cailler had even an estimate as to the amount of time she would need to recover to enable her to perform the essential functions of her job as a CNA.

Cailler's reliance on Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638 (1st Cir. 2000); Criado v. IBM Corp., 145 F.3d 437 (1st Cir. 1998); and Ralph v. Lucent Technologies, Inc., 135 F.3d 166 (1st Cir. 1998) to support her argument that providing her an unpaid extended leave of absence was a reasonable accommodation, (Pl. Mem. at 9), is misplaced. Although the cases recognize that an extension for additional leave may constitute a reasonable accommodation, each turned on their specific facts in determining whether the leave requested by the plaintiff given his or her circumstances was reasonable. In each case, the plaintiff had requested a limited extension or provided a certain time frame within which he or she could return to work, which is simply not the case here. See Garcia-Ayala, 212 F.3d at 649, 650 (holding that, under the circumstances, the plaintiff's requested accommodation of a two-month extension of a leave policy on top of a medical leave of fifteen months was reasonable and noting that "where the employee gave no indication as to when she might be able to return to work, and, instead she simply demanded her [original] job be held open indefinitely," such accommodation could be considered unreasonable); Criado, 145 F. 3d at 443, 444 (stating that "[a] leave of absence and leave extensions are reasonable accommodations in some circumstances" and in plaintiff's case, providing plaintiff with "temporary" leave was reasonable since the evidence showed that it would only be a "temporary and would allow her physician to design an effective treatment program"); Ralph, 135 F.3d at 172 (affirming that a "very limited four-week" leave extension was reasonable).

Accordingly, in light of the undisputed facts in this case, as discussed above, the Court finds that granting Cailler to take an unpaid, indefinite leave of absence was not a reasonable

accommodation.

### 2.     Extension of the Modified Duty Program

Cailler asserts that although she did not request it, Care Alternatives failed to allow her to continue working in the modified duty position as a hospice assistant created for her under the Program as a reasonable accommodation. (Pl. Mem. at 9).

In <u>Russell</u>, the Supreme Judicial Court made clear that an employer has no obligation to create a new position for an employee as an accommodation, where, as here, the employee cannot perform the essential functions of her original job. 437 Mass. at 454. There, after the plaintiff injured herself on the job, she requested (in addition to the extended leave discussed <u>supra</u>) that her employer allow her to work in another position at the hospital or create a rehabilitation position in a different department for her. <u>Id.</u> at 453-54. The plaintiff argued that the hospital discriminated against her on the basis of her handicap by refusing to provide her with another position (be it an existing open position or a newly created position). <u>Id.</u> In rejecting the plaintiff's argument, <u>Russell</u> explained that "an employer is barred from dismissing employees who are 'capable of performing the essential functions *of the position involved* with reasonable accommodation,'" <u>id.</u> at 454 (emphasis in original) (quoting Mass. Gen. L. c. 151B § 4(16)), and that the Massachusetts employment discrimination statute does not include reassignment to vacant positions and does not require the hospital to create a new position for the plaintiff. <u>Id.</u> Turning to the plaintiff's circumstances, the court in <u>Russell</u> emphasized that the plaintiff did not request to return to her former position, "did not request any accommodation that would enable her to perform those essential functions," and provided evidence that she was not capable of performing her former position at the time she was terminated. <u>Id.</u> Instead, she sought a different position in the hospital,

13

"an accommodation the hospital was under no obligation to provide." Id.

Care Alternatives similarly had no obligation to create a temporary position for Cailler for sixty days (although it did so in the form of the modified duty position as a hospice assistant under the Program) because she could not perform the essential functions of her position as a CNA. A reasonable accommodation provided to an employee with a handicap is to allow her to perform the essential functions "of the position involved," Russell, 437 Mass. at 454 (quoting Mass. Gen. L. c. 151B, §4(16)) - i.e., the plaintiff's original position. Cailler does not dispute that at the time of her termination, she was unable to perform the essential functions of her position as a CNA. Cailler's request for continued employment in the modified duty position created under the Program is therefore not a reasonable accommodation under these circumstances. See, e.g., Scott, 80 Mass. App. Ct. at 668 (finding the plaintiff was not a qualified handicapped person and rejecting that defendant was required to provide the accommodation of creating a new position for the plaintiff).

That Care Alternatives nonetheless created this position for Cailler under the Program should not as a policy matter, expose it to greater liability under Mass. Gen. L. c. 151B, § 4(16) than employers who do not offer such policies. Although once Care Alternatives did so, their obligations to Cailler were not excused, see Ralph, 135 F.3d at 172, the accommodation Cailler now contends should have been provided to her must nonetheless be reasonable.

The Court finds that neither accommodation Cailler argues should have been provided were reasonable in light of the undisputed facts here. As she was unable to perform the essential functions of her job as a CNA with a reasonable accommodation, as of August 10, 2008 and then as of October 10, 2008 (when her modified duty under the Program ended), Cailler was not a

qualified handicapped person within the meaning of the statute and has therefore failed to establish a claim under Mass. Gen. L. c. 151B.

### 3. Cailler's Claim that Care Alternatives Failed to Engage in an Interactive Dialogue with Her

Cailler nonetheless contends that Care Alternatives did not engage in an interactive dialogue with her or undertake an individualized analysis of her situation and did not consider making an exception to the sixty-day limit of the Program. (Pl. Mem. at 9-11, 13-14). Generally, "[i]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one." Russell, 437 Mass. at 457 (internal quotation marks and citation omitted). "An employee's obligation to request an accommodation stems from the basic principle that an employer is not required to accommodate a need that it does not know exists." Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 441 Mass. 632, 649 n. 21 (2004).[7] Although the precise scope of the employer's obligation is unclear, "'[o]nce a qualified individual with a disability has requested provision for a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation . . . through a flexible, interactive process that involves both the employer and the qualified individual with a disability.'" Russell, 437 Mass. at 457 (quoting 29 C.F.R. § 1630 App. (2001)).[8] An employee's request may be unnecessary to trigger the employer's obligation in the

---

[7]In Ocean Spray, the Supreme Judicial Court concluded that an employee had made an adequate request for accommodation of his vision impairment. 441 Mass. at 649-50. There, the employee had submitted to his human resources manager three letters from physicians that supported his claim that the requirements of his job exceeded his physical capabilities and the employer took no action in response. Id. at 650.

[8]The relevant MCAD guideline states: "[i]f a person with a handicap requests but cannot suggest an appropriate accommodation, the employer and the individual should work together to

15

rare circumstance that the employee's condition "makes it obvious that accommodation is required, or a condition . . . renders the employee incapable of making a request." Leach, 63 Mass. App. Ct. at 567; Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 n. 7 (1st Cir. 2001) (noting that an employee may not be required to request an accommodation when the employee's need for an accommodation is "obvious"). Under such circumstances, the MCAD has noted that "an employer has a duty to ask the employee whether (s)he is in need of an accommodation of his or her disability in order to be able to perform the essential functions of her job." Johansson v. Dep't of Corr., 2010 WL 2320632, at *6 (MCAD May 28, 2012).[9] However, "[a]n interactive process claim cannot succeed unless the interaction could have led to the discovery of a reasonable accommodation that would have enabled the plaintiff to perform the essential functions of her position." Richardson v. Friendly Ice Cream Corp., 594 F.3d 69, 82 (1st Cir. 2010) (granting summary judgment on plaintiff's interactive process claim because plaintiff failed to identify any reasonable accommodation that would have "enable[d] her to perform a sufficiently broad range of manual tasks" essential to her job). The evidence shows that Cailler did not request the specific

---

identify one. The employer may direct the employee to provide reasonable documentation from a health care provider of the existence of a handicap and the need for reasonable accommodation." MCAD Guidelines: Employment Discrimination on the Basis of Handicap Chapter 151B, § II.C (1998). The MCAD's guidelines are "persuasive, though not binding, interpretive assistance" of an employer's obligations under Mass. Gen. L. c. 151B. Leach, 63 Mass. App. Ct. at 567.

[9]Although Cailler cites Mass. Bay. Transp. Auth. v. Mass. Comm'n Against Discrimination, 450 Mass. 327, 341-42 (2008) for the general proposition that an employer's mere awareness of an employee's disability requires the employer to engage in an interactive dialogue with the employee to determine if the employer can provide a reasonable accommodation, this case does not stand for such a broad proposition. Id. (noting that "[w]e do not agree with the MCAD, however, hat an employer's failure to engage in the interactive process is, in and of itself, a violation of G.L. c. 151B, § 4(1A), irrespective of whether a reasonable accommodation is possible").

accommodations she now argues should have been provided– namely, extending her modified duty assignment under the Program or granting her an unpaid extended leave of absence. See, e.g., Def. Statement of Facts ¶¶ 28-30; Pl. Resp. to Def. Statement of Facts ¶¶ 28-30. Even if the need for the accommodation was "obvious" enough to trigger an obligation to engage in an interactive dialogue, the interactive dialogue would have been futile since neither extending the modified duty assignment nor granting an extended, indefinite leave of absence was a reasonable accommodation. Accordingly, this argument does not aid Cailler's claim.

Care Alternatives is therefore entitled to summary judgment as to Count I, Cailler's claim that Care Alternatives failed to provide her with a reasonable accommodation. Because Cailler has the burden to establish that she is a qualified handicapped person to prevail on her claim that she was terminated because of her disability under Mass. Gen. L. c. 151B, and has failed to make such showing here, Care Alternatives' motion for summary judgment as to Count II is also GRANTED.[10]

### B. Whether the Program is a *Per Se* Violation of Mass. Gen. L. c. 151B

Cailler further asserts that the Program is a *per se* violation of Mass. Gen. L. c. 151B because it requires injured employees to be 100% healed before returning to work and the strict application of the Program's sixty-day limitation culminated in the termination of her employment. (Pl. Mem. 11-14). The Court need not reach this, however, because it is undisputed that Cailler

---

[10]Because Cailler is not a qualified handicapped person, the Court need not reach Cailler's argument that failing to provide either accommodation would not have constituted an undue hardship on Care Alternatives (Pl. Mem. at 14), since the statute first requires that the employee be a "qualified handicapped person" by showing she could perform the essential functions of her job with or without a reasonable accommodation. Only then does the employer need to demonstrate that the "accommodation required to be made . . . would impose an undue hardship to the employer's business." Mass. Gen. L. c. 151B, § 4(16).

was unable to perform the functions of her position on August 10, 2008, before she was placed on modified duty under the Program or on October 10, 2008, the expiration of her modified duty status under the Program and when she was terminated. That is, whether Care Alternatives had the Program in place,[11] it remains the case that Cailler was not a "qualified handicapped person." Although it remains true that, with or without the Program, Care Alternatives still has a legal obligation to adopt any reasonable accommodations that would enable a qualified handicapped person to perform the functions of her position, for all the reasons stated above, the accommodations now proffered by Cailler were not reasonable.

---

[11]Moreover, unlike the strict leave policy in Gracia v. Northeastern Univ., 2008 WL 5429550 (MCAD Dec. 30, 2008) (which "terminates the employment of all employees, without exception, who are unable to return to work after being granted six months of disability leave") (Pl. Mem. at 12), upon which Cailler heavily relies, the Program at issue here is not a strict leave policy; rather, it allows injured employees to remain employed with Care Alternatives, but in a different position. The language of the policy in this case, unlike the policy in Gracia, also does not automatically terminate the employment of all injured employees on the 61st day with no exceptions. The policy for the Program states that "[i]f an employee is not released by his/her physician to full duty without restrictions after sixty days of modified duty, employment *may* be terminated. If termination occurs, the employee will be notified that he/she may apply for a position after being returned to full duty without restrictions." Pl. Mem., Tab 3 (emphasis added); see also Kramer Aff., Ex. B (Anderson Dep. at 68). Moreover, in Gracia, the MCAD made clear that its finding that the policy there was a *per se* violation of Mass. Gen. L. c. 151B did not provide any recovery for the plaintiff since the MCAD also concluded that the plaintiff was not a qualified handicapped person within the meaning of Mass. Gen. L. c. 151B because he was "at all times subsequent to his medical leave of absence, unable to perform the essential functions of his job, with or without an accommodation, " 2008 WL 5429550, at *9, and his employer had not failed to provide a reasonable accommodation because, among other things, Gracia "provided no information whatsoever concerning his ability to return to work and when his return might be anticipated." Id.; cf. McFail v. Sylvania Lighting Servs., 2008 WL 3892143, at *8 (MCAD Aug. 19, 2008) (holding that an employer's failure to inform the employee of the precise date her leave would expire and that the "rigid and uncommunicative manner" in which the employer implemented its twenty-six week job retention policy in relation to the plaintiff constituted a "disparate application of the Company's . . . policy -- harsh in relation to Complainant's pregnancy, flexible in relation to others"). As discussed above, such is also the case here.

## VI. Conclusion

For the foregoing reasons, Care Alternatives' motion for summary judgment is GRANTED and Cailler's motion for summary judgment is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge